# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nº 10-CV-114 (JFB)(WDW)

———————————

## LIDIA SWIATKOWSKI,

Plaintiff,

VERSUS

## CITIBANK AND AS CITIGROUP AND AS CITIMORTGAGE AND (CMI) SERVICING AGENT JOINTLY AND SEVERALLY AND "1" THROUGH "100," THESE NAMES BEING FICTITIOUS, THE ACTUAL NAMES AND ADDRESSES BEING UNKNOWN; EACH NAMED PARTY INDIVIDUALLY AND JOINTLY AND IN THEIR OFFICIAL CAPACITY, IF ANY,

Defendants.

———————————

**MEMORANDUM AND ORDER**
October 7, 2010

———————————

JOSEPH F. BIANCO, District Judge:

On January 12, 2010, plaintiff Lidia Swiatkowski (hereinafter "plaintiff," or "Swiatkowski"), brought this action against defendants Citibank, Citigroup, Citimortgage, and (CMI) Servicing Agent (collectively "defendants"), pursuant to 42 U.S.C. §§ 1981, 1982, 1983 and 18 U.S.C. §§ 1961, 1962, 1963, 1964, 1965, alleging, *inter alia*, that defendants violated plaintiff's constitutional rights under the First, Fifth, Sixth, Thirteenth, Fourteenth, and Fifteenth Amendments to the Constitution and committed certain violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Presently before the Court is defendants' motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants the motion in its entirety. Specifically, the Court concludes that plaintiff's federal claims are barred by the *Rooker-Feldman* doctrine to the extent that she seeks to challenge and undo the 2005 Judgment of Foreclosure and Sale and, in any event, are barred in their entirety on collateral estoppel and *res judicata* grounds. To the extent that plaintiff is attempting to raise any new state law claims, the Court declines, in its discretion, to exercise supplemental jurisdiction over any such claims. Accordingly, defendants' motion to dismiss is

granted, and plaintiff's complaint is dismissed in its entirety. However, defendants' request for sanctions—including costs and an order precluding plaintiff from bringing further lawsuits without leave of Court—is denied.

## I. Background

The following facts are taken from the complaint ("Compl.") These facts are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party. The Court also takes judicial notice of court documents relating to plaintiff's prior state and federal court actions in order to describe the procedural posture of this case.

### A. Prior State and Federal Court Actions

On September 18, 1990, Citibank, N.A. financed plaintiff's acquisition of 7 Park Lane Place in Massapequa, NY (hereinafter "7 Park Lane Place" or "the property"). *See In re Koloch*, 416 B.R. 375, 376 (Bankr. E.D.N.Y. 2009). Plaintiff and her husband, Michael Swiatkowski, along with Betina Koloch (also known as Betina Swiatkowski, hereinafter "Koloch"), who appears to be a relative of plaintiff who also resides at 7 Park Lane Place, executed a mortgage note in the principal amount of $264,000 and delivered a mortgage against the property. *Id.* On June 1, 1998, the Swiatkowskis and Koloch defaulted under the note and mortgage. As a result thereof, Citibank's successor-in-interest commenced a foreclosure action in the Supreme Court, Nassau County, and obtained a judgment of foreclosure on April 20, 1999. *Id.*

On October 25, 2000, Michael Swiatkowski filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Eastern District of New York (hereinafter "the Bankruptcy Court"). This filing stayed the foreclosure sale of the property. *See id.* On January 16, 2001, Michael Swiatkowski's bankruptcy petition was dismissed on the application of the Chapter 13 case trustee due to Michael Swiatkowski's default in making payments. That case was closed on February 16, 2001.

Citibank instituted a Foreclosure Action regarding the property on January 17, 2001 in Supreme Court, Nassau County. Thereafter, on March 7, 2001, plaintiff Lidia Swiatkowski filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. That case was dismissed on November 6, 2001, with prejudice; the case was closed on December 12, 2001. *See id.*

While plaintiff's voluntary petition proceeding was pending, she, her husband, and Koloch requested a workout arrangement with CitiMortgage. However, they would not sign a stipulation of settlement, which was part of the forbearance agreement process. According to CitiMortgage, the loan representative working with the Swiatkowskis authorized the acceptance of funds without an executed stipulation. CitiMortgage thus accepted payment of $101,230.49 without a written settlement agreement. The forbearance agreement was calculated at the monthly payment amount of $3,231.00. However, according to CitiMortgage, the annual taxes and insurance at the time of reinstatement were $12,553.41, and the $3,231.00 monthly payment was insufficient to reinstate the escrow deficit. According to a September 30, 2009 Order by the Honorable Dennis E. Milton, United States Bankruptcy

Judge,[1] who presided over the liquidation eventually filed by Koloch, discussed *infra*, at that time:

> CitiMortgage's documentation reflected considerable confusion at CitiMortgage concerning the amount of the monthly mortgage payment. It appears from its own records that the mortgagors may not have been in default under the mortgage in May 2002. By letter dated June 25, 2002, CitiMortgage informed the mortgagors that they were current through May 1, 2002 and were due for the June 1, 2002 payment. The payment history further reflects that in May 2002, a time when CitiMortgage allegedly notified the mortgagors that they were current with their mortgage payments, CitiMortgage referred the file to its attorneys for foreclosure.

> On or about April 24, 2002, CitiMortgage issued a notice to the [mortgagors] that the monthly payment had adjusted upward to $4,703.00 per month; CitiMortgage claimed that the [mortgagors] were given notice of this adjusted mortgage payment on or about May 1, 2002. On or about June 19, 2002, the [mortgagors] received a letter from CitiMortgage informing them that the amounts remitted in the June 2002 payment were sufficient to cover the monthly amount due of $4,753.28. On June 20, 2002, CitiMortgage informed the mortgagors that their payment was late and imposed a late payment charge of $50.28. On or about July 11, 2002, CitiMortgage, according to the payment history, reversed the payments in the amount of $3,231.00 for the months of May and June 2002 and returned the payments to the co-obligor Lidia Swiatkowski.

*Id.*[2]

On or about January 23, 2003, Citibank, N.A. brought an action for foreclosure in the New York State Supreme Court, Nassau County, under index number 1197/2003, against Lidia Swiatkowski, Michael Swiatkowski, and Betina Koloch (Swiatkowski). On or about March 10, 2004, the state court granted a motion by Citibank for summary judgment in the Foreclosure Action. On November 10, 2004, Swiatkowski moved by Order to Show Cause in state court to vacate the judgment of foreclosure. That motion was denied. On November 22, 2004, Swiatkowski filed a notice of appeal in the Foreclosure Action with the Supreme Court Appellate Division, Second Department. Two days later, on November 24, 2004, Swiatkowski filed a petition to remove the Foreclosure Action to federal court because

---

[1] The undersigned notes the recent passing of Judge Milton and points out that Judge Milton's handling of this *pro se* bankruptcy proceeding is a classic illustration of the many qualities—including sound judgment and a painstaking effort to ensure that each proceeding was conducted in a fair and just manner according to the law—that made him an exemplary jurist who will be greatly missed.

[2] Although plaintiff suggests that the Bankruptcy Court made some type of finding of fraudulent conduct by defendants, no such finding was made. In fact, as discussed *infra*, the Bankruptcy Court concluded that plaintiff failed to make mortgage payments from November 1, 2002 through October 1, 2007, for a total principal balance consisting of $282,180.00.

"the state court cannot, is unwilling, or that an extra-judicial climate exists that is prejudicial to petitioner's civil rights and the enjoyment of her constitutional rights because racial, ethnic, or religious or other bias." *See Citibank, N.A. v. Swiatkowski, et al.*, No. 04-cv-5122 (ADS) (ARL). On January 12, 2005, Swiatkowski also filed a separate federal lawsuit against Citibank and other defendants, alleging various civil rights violations in connection with the foreclosure proceedings. *See Swiatowski v. New York, et al.*, No. 05-cv-178 (ADS) (ARL). On March 18, 2005, the Honorable Arthur D. Spatt, U.S. District Judge for the Eastern District of New York, remanded the state case to Supreme Court, Nassau County, and dismissed the federal lawsuit, for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. *See* Order, *Swiatkowski v. New York*, No. 04-cv-5122 and No. 05-cv-178 (E.D.N.Y. Mar. 18, 2005). In connection with the federal lawsuit, Judge Spatt noted he had considered the "124-page, 364-paragraph complaint encompassing sixteen causes of action against various parties that are involved in the Foreclosure Action, including the New York State Supreme Court justice presiding over the Foreclosure Action, Citibank, and its attorneys," but that "there is no doubt that the Swiatkowskis' claims arise from their mortgage foreclosure proceedings in state court." *Id.* at 6-7. The Court added, "Despite the fact that the claims are cast in terms of civil rights violations, Swiatkowski's purpose in filing this action in federal court is clearly to avoid the results of the state court rulings. This latest case, apparently, demonstrates their dissatisfaction with the state court proceedings. . . . Put simply, Swiatkowski cannot enter through the back door to evade the Rooker-Feldman doctrine in order to get into federal court." *Id.* at 7-8.

Plaintiff appealed Judge Spatt's decision,

and, on December 13, 2005, the Second Circuit affirmed the decision based upon the *Rooker Feldman* doctrine. *See Swiatkowski v. New York*, 160 F. App'x 30 (2d Cir. 2005). In particular, on the federal civil rights lawsuit, the Court concluded, "The [case] concerns allegations of various civil and constitutional rights violations but essentially amounts to an objection to the disposition of the foreclosure action by the Supreme Court, Nassau County. The defendants include the state trial judge, the Governor and Attorney General of New York, and employees of and attorneys of Citibank. As the District Court correctly found, the Rooker-Feldman doctrine bars district courts from adjudicating claims, such as those of the Swiatkowskis, that are 'inextricably intertwined' with state court determinations-claims that assert 'injur[ies] based on a state judgment and seek[ ] review and reversal of that judgment.'" *Id.* at 31 (citation omitted).[3]

On September 15, 2005, the Nassau County Supreme Court issued an order confirming the report of the Referee William J. Corbett, Esq., granting the foreclosure, along with expenses, and costs. On October 4, 2005, Swiatkowski filed another Notice of

---

[3] There also was a prior 2002 action brought by plaintiff against CitiMortgage and other defendants alleging, among other things, that the defendants "(1) committed 'consumer harassment;' (2) rejected their mortgage payments in violation of a settlement plan; (3) conspired to force them to leave their home; (4) 'deceived the court' and initiated a foreclosure action based on 'misleading information;' and (5) caused them to suffer medical and credit problems.'" *Swiatkowski v. Bank of Am., et al.*, 103 F. App'x 431 (2d Cir. 2004) (quoting complaint). The Second Circuit similarly affirmed the dismissal of that lawsuit based, among other things, on the *Rooker-Feldman* doctrine.

Removal of the same Foreclosure Action. In the Notice of Removal, plaintiff stated the same grounds for removal. On October 29, Judge Spatt again dismissed the case as, *inter alia*, barred by the *Rooker-Feldman* doctrine. *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 9-10 (E.D.N.Y. 2005). On October 13, 2005, the Nassau County Supreme Court issued a Final Judgment of Foreclosure and Sale (hereinafter "Judgment of Foreclosure and Sale" or "foreclosure judgment") in the state case. (*See* Compl. Ex. D.) This foreclosure judgment was served on plaintiff on December 22, 2006, and was filed with the Supreme Court, Nassau County, on December 26, 2006.

On November 4, 2005, Michael Swiatkowski filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. That case was dismissed on November 16, 2006, upon motion of the Bankruptcy Trustee. The case was closed on January 19, 2007. On December 12, 2006, plaintiff filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On April 17, 2007, the case was dismissed with prejudice and closed on June 19, 2007. On April 2, 2007, Michael Swiatkowski filed another voluntary petition for relief under Chapter 13 of the Bankruptcy Code. That case was dismissed with prejudice on August 8, 2007.

On October 4, 2007, Koloch filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On November 7, 2007, CitiMortgage filed a proof of claim in the action. On January 11, 2008, plaintiff's counsel filed an objection to CitiMortgage's proof of claim. On March 4, 2008, counsel for CitiMortgage filed an Affirmation in Opposition to the Objection. On March 6, 2008, plaintiff's counsel filed a reply to the affidavit in opposition. On March 6, 2008,

counsel for CitiMortgage filed a supplemental affidavit in opposition to the objection. On May 9, 2008, the Bankruptcy Court conducted a hearing on the objection, and by Order issued September 30, 2009, the Bankruptcy Court reduced CitiMortgage's proof of claim from $475,473.99 to $444,590.14.

In reducing the amount of the proof of claim, the Bankruptcy Court did not conclude that CitiMortgage had committed any type of fraud. Instead, the Bankruptcy Court concluded that, although CitiMortgage may have erroneously believed plaintiff was in default on mortgage payments in May 2002, there was no question that plaintiff was in default from November 2002 to October 2007, and that Citibank had adequately established that the principal balance remaining was $221,773.69:

> **With** regard to the principal balance, the Objectant challenged the amount of the monthly mortgage payment. As previously noted, the documentation reflected significant confusion at CitiMortgage concerning the amount of the monthly mortgage payment. Referring to a prior foreclosure action in which the Massapequa Property was the subject and which resulted in the reinstatement of the mortgage in December 2001, the Objectant noted that the mortgagors remitted the prior payment amount of $3,231.00 to CitiMortgage from January 2002 through May 2002, and CitiMortgage accepted them. CitiMortgage's proof of claim states that the mortgagors failed to make mortgage payments for the period November 1, 2002 through October 1, 2007, a period of 60 months at a rate of $4,703.00, for a total principal balance of $282,180.00.

5

The payment history reflects that effective May 2002, a time when CitiMortgage notified the mortgagors that they were current with their mortgage payments, CitiMortgage referred the file to its attorneys for foreclosure, even though it appears from its own records that the mortgagors were not in default in May 2002.

As the Objectant has established, CitiMortgage initially failed to provide sufficient documentation to support its Proof of Claim. In subsequent pre- and post-hearing submissions, in March and October 2008, CitiMortgage supplemented its Proof of Claim and responded to the Objection as noted below. Citibank presented documentation to support the element in its Proof of Claim that the mortgagors failed to make mortgage payments from November 1, 2002 through October 1, 2007, a period of 60 months at a rate of $4,703.00, for a total principal balance of $282,180.00.

In conclusion, CitiMortgage has adequately established that the principal balance consisted of $221,773.69.

(Bankruptcy Court's Sept. 30, 2009 Order, at 7-8.) Thus, the reduction by the Bankruptcy Court in CitiMortgage's proof of claim did not relate to the principal balance, but rather related to the amount of deficiency expenses being sought by CitiMortgage. Specifically, the Bankruptcy Court concluded that Citibank could only collect fees and other expenses expressly provided for in the judgment of foreclosure, which resulted in the claim being reduced from $475,473.99 to $444,590.14. (*Id*. at 9-11.)

On October 19, 2009, the Bankruptcy Court issued an Order Denying Confirmation and Granting the Trustee's Motion Dismissing the Case without prejudice. On October 27, 2009, plaintiff filed an objection to the Bankruptcy Court's Order denying Chapter 13 plan confirmation and dismissing the case. In that objection, plaintiff raised substantially the same claims that she raises in the instant complaint—specifically, that defendants (the creditors in the bankruptcy proceeding) committed bankruptcy fraud by filing fraudulent or altered documents. The Bankruptcy Court noted that plaintiff's motion, in essence, sought the Bankruptcy Court's reconsideration of the same matters that had previously been before the Court. The Bankruptcy Court further noted that it had "painstakingly reviewed and analyzed the claims of the debtors in the seven cases" that were brought by plaintiff, her husband, and Koloch, and found no reason or cause to reopen the case; thus, by Order dated March 31, 2010, plaintiff's objection was overruled. *See* Decision and Order on Objection, at 7, *In re Koloch*, No. 8-07-73919-dem (Bankr. E.D.N.Y. Mar. 31, 2010). No appeal of the Bankruptcy Court's Order was filed and that case was closed.

B. Instant Complaint

Plaintiff brought the instant complaint pursuant to 42 U.S.C. §§ 1981, 1982, 1983 and 18 U.S.C. §§ 1961, 1962, 1963, 1964, 1965, alleging that plaintiff's constitutional rights were violated by defendants. (Compl. ¶ 4.) Plaintiff alleges that her home at 7 Park Lane Place, in Massapequa, NY, is currently valued at over $1 million. (*Id.*) According to the complaint, the plaintiff filed for

bankruptcy protection due to the imminent danger of foreclosure on her home.[4] (*Id.* ¶ 9.) According to plaintiff, during the bankruptcy proceeding, defendant Citibank[5] filed a proof of claim that "violated Rule Title 18 U.S.C. Sec. 152 and 3571 of the Bankruptcy Law."[6] (*Id.* ¶ 12.) It appears that plaintiff alleges that defendants filed a proof of claim in Koloch's bankruptcy that was fraudulent or inaccurate as to the amount owed by the debtor. According to the complaint, Judge Milton, discovered this error, which resulted in a reduction of defendant's proof of claim from $475,473.99 to $444,590.14. (*Id.*) Plaintiff further contends that additional documents were fabricated to substantiate defendants' proof of claim, including a fraudulent Notice of Entry and Affidavit of Service. (*Id.* ¶ 14.) Plaintiff further alleges that an original Notice of Entry and Affidavit of Service registered

with the New York State Supreme Court does not exist. (*Id.* ¶ 15.)

Plaintiff further alleges that the foreclosure sale of her property was listed in local newspapers on November 9, 2005, but that the plaintiff and all parties involved were not notified about the sale. (*Id.* ¶ 17.) Plaintiff contends that the Affidavit of Service states that the notice was mailed more than a year after the sale was listed in the paper. (*Id.* ¶¶ 17, 29.) Plaintiff also alleges that the Sworn Notary for Affidavit of Service in the order is signed by the same attorney who signed off on the notice of service on the same order, Tedd Powel, Esq. (*Id.* ¶¶ 18, 20, 28.) Plaintiff further alleges that the Nassau County Clerks' Office seal of receipt on the order has been tampered with and the date was altered from 2005 to 2006. (*Id.* ¶¶ 19, 26, 27.)

Plaintiff also appears to allege that any declaration of default or order of foreclosure against plaintiff and her co-mortgagees was in error. According to the complaint, Judge Milton's opinion dated September 30, 2009 notes that it appeared from CitiMortgage's records that plaintiff was not in default under the mortgage in May 2002, but nonetheless, at that time, "CitiMortgage referred the file to its attorneys for foreclosure." (*Id.* ¶ 21.) Plaintiff alleges that this indicates that defendants acted with a criminal intent. (*Id.*)

Plaintiff alleges that she has suffered "heart attack failures" due to the defendants' actions and that her husband has had heart attacks as recently as September 2009 due to the actions of the defendants. (*Id.*) Accordingly, plaintiff brings claims for violation of her right to equal protection under the law, by submitting "material facts which amount[ed] to culpable misrepresentations

---

[4] Plaintiff presumably refers to the various bankruptcy petitions filed by herself, her husband Michael Swiatkowski, and Koloch, who appears to be a relative and co-occupant of their home.

[5] Plaintiff appears to use Citibank and CitiMortgage interchangeably throughout her papers. However, according to defendants, these are two separate entities. Citigroup is a foreign corporation whose chairman is Vikram Pandit. CitiMortgage is a domestic corporation. (*See* Defs.' Mot. at 24 n.7.) The Court defers to plaintiff's designations, but notes that whether plaintiff's designations are erroneous is not crucial because the Court dismisses the claims against all defendants.

[6] Under Section 152 of Title 18, United States Code, it is a federal crime to file a false or fraudulent claim in a bankruptcy case. Section 152 provides for a fine, for imprisonment of up to five years, or both for a violation. Section 3571 of Title 18 provides a maximum fine of $250,000 for an individual offender and $500,000 for any "organization' convicted of a violation. *See* 18 U.S.C. §§ 152, 3571.

and intentional false statements." (*Id.* ¶ 23.) Plaintiff also brings claims under RICO for forgery, submission of falsified documents, deprivation of due process, and perjury by the defendants. Plaintiff finally alleges that, as a result of defendants' above-referenced conduct, she has become "tense, nervous, irritable and suffered great mental anguish" and "[p]laintiff and her husband was forced to endure a great deal of mental and physical suffering." (*See id.* ¶¶ 45-49.)[7]

## C. Procedural History

Plaintiff filed the complaint in this action on January 12, 2010. On February 24, 2010, defendants filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss the action. A pre-motion conference to discuss the anticipated motion was held on March 11, 2010. On April 12, 2010, defendants filed their motion to dismiss. On April 14, 2010, plaintiff moved by Order to Show Cause for a temporary restraining order and preliminary injunction against defendants, to prevent the impending foreclosure on plaintiff's home, which was scheduled for May 4, 2010. Defendants filed

opposition to the Order to Show Cause on April 19, 2010, and the Court held oral argument regarding the temporary restraining order and preliminary injunction on April 20, 2010. The Court denied plaintiff's motion on that date on the record. Plaintiff filed opposition papers to defendants' motion to dismiss on May 12, 2010. On May 26, 2010, defendants submitted their reply. Oral argument was heard on July 13, 2010. On July 15, 2010, plaintiff filed another submission attempting to address issues from the oral argument. The Court has fully considered all of the submissions of the parties, including plaintiff's July 15th submission.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. ---

---

[7] These allegations of mental and physical suffering have appeared, among other places, in plaintiff's prior lawsuit in this Court which have been dismissed and affirmed by the Second Circuit based upon *Rooker-Feldman*. *See* Complaint in *Swiatkowski v. New York, et al.*, No. 05-cv-178 (ADS) (ARL), at ¶¶ 361-62 ("As a result of defendant's wrongful actions, Lidia Swiatkowski became tense, nervous, irritable and suffered great mental anguish. . . . Plaintiff Lidia Swiatkowski and her husband was [sic] forced to endure a great deal of mental and physical suffering. . . . As a result of defendant's wrongful actions, Lidia Swiatkowski has had four heart failures, stopped enjoying life with her husband of forty years.").

U.S. ----, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and vacated in part on other grounds sub nom.*, *Dabit v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71 (2006); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim"); *Brodeur v. City of N.Y.*, No. 04 Civ. 1859, 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. 2005) (stating court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

### III. DISCUSSION

Defendants move to dismiss plaintiff's complaint as barred by the *Rooker-Feldman* doctrine and by the doctrines of collateral estoppel and *res judicata*.[8] For the reasons set forth below, the Court concludes that plaintiff's federal claims are barred by the *Rooker-Feldman* doctrine to the extent that she seeks to challenge and undo the 2005 Judgment of Foreclosure and Sale and, in any event, are barred in their entirety on collateral estoppel and *res judicata* grounds.

### A. *Rooker-Feldman* Doctrine

Defendants argue that *Rooker-Feldman*

---

[8] Defendants also moved to dismiss the complaint for failure to properly serve defendants. However, at oral argument, counsel for defendants withdrew that ground for dismissal at this juncture of the case. Defendants also moved to dismiss the instant action based on plaintiff's failure to state a claim for each cause of action alleged in the complaint. Because the Court concludes that plaintiff's federal claims are barred by the *Rooker-Feldman* doctrine, collateral estoppel, and *res judicata*, the Court need not reach these arguments.

precludes plaintiff from bringing this action. Specifically, defendants contend that plaintiff is seeking relief from a foreclosure action that defendants Citibank, CitiGroup, and CitiMortgage instituted in 2003 in New York State Supreme Court. For the reasons set forth below, the Court concludes that, to the extent plaintiff's present action attempts to challenge the state court judgment of foreclosure on the property at 7 Park Lane Place, plaintiff's claims are barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine arises from two decisions issued by the United States Supreme Court, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and stands for the proposition that "lower federal courts possess no power whatever to sit in direct review of state court decisions." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970); *accord Hoblock v. Albany Cty. Bd. of Elecs.*, 422 F.3d 77, 84 (2d Cir. 2005) ("[F]ederal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."). Though this doctrine was once improperly equated with that of *res judicata*, *see Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 199-200 (2d Cir. 1996), the Supreme Court has clarified that *Rooker-Feldman* is jurisdictional in nature, whereas *res judicata* deals with preclusion. *See Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 293 (2005) ("Preclusion, of course, is not a jurisdictional matter. *See* Fed. Rule Civ. Proc. 8(c) (listing res judicata as an affirmative defense).").

In *Hoblock*, the Second Circuit rigorously re-examined the *Rooker-Feldman* doctrine in light of the Supreme Court's decision in *Exxon Mobile Corp. v. Saudi Basic Indus.*

*Corp.*, 544 U.S. 280 (2005). *See Hoblock*, 422 F.3d at 83. The Second Circuit noted that *Exxon Mobile* had reduced the expanse of the *Rooker-Feldman* doctrine, "holding that it 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Hoblock*, 422 F.3d at 85 (quoting *Exxon Mobile*, 544 U.S. at 284). Thus, the Second Circuit delineated four requirements for the application of *Rooker-Feldman*: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* at 85 (internal citations and quotations omitted). The Second Circuit has classified the first and fourth requirements as "procedural" and the second and third requirements as "substantive." *See id.* As discussed below, all four of these requirements are satisfied in this case.

i. Procedural Requirements

The procedural requirements of *Rooker-Feldman* are met here. First, plaintiff lost in state court as evidenced by the state court Judgment of Foreclosure and Sale dated October 13, 2005. Second, the state court judgment was rendered in 2005, well before these district court proceedings were commenced on January 12, 2010. Therefore, plaintiff lost in state court, and, to the extent the allegations in plaintiff's complaint challenge the judgment of the New York State Supreme Court, Nassau County, her claims

relate to a state-court judgment "rendered before the district court proceedings commenced." *See Hoblock*, 422 F.3d at 85. Accordingly, the procedural requirements of *Rooker-Feldman* are met.

### ii. Substantive Requirements

The Court concludes that, to the extent that plaintiff seeks to challenge the state court judgment of foreclosure, the substantive requirements of *Rooker-Feldman* are met as well. The substantive requirements of *Rooker-Feldman* are that "the plaintiff must complain of injuries caused by a state court judgment" and "the plaintiff must invite district court review and rejection of that judgment." *Holblock*, 422 F.3d at 85. A plaintiff's injuries are not "caused by a state court judgment" when the state court "simply ratified, acquiesced in, or left unpunished" the actions of a third party. *Id.* at 88. Additionally, "a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings." *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007). Events occurring after the state court judgment may also break the causal chain. For example, in *Morrison v. City of New York*, 591 F.3d 109 (2d Cir. 2010), the Second Circuit construed a Queens Family Court order as directing hospital personnel to evaluate plaintiff and hold her for two weeks if the hospital found she was a danger to herself or to others. 591 F.3d at 113. The hospital found that plaintiff was dangerous and detained her. *Id.* The Second Circuit held that *Rooker-Feldman* did not bar plaintiff's § 1983 suit challenging her detention because the cause of her detention—and the issue plaintiff sought

review of—was the hospital's finding that she was dangerous, not the court order directing the hospital to evaluate plaintiff. *Id.* at 115.

Here, read as a whole, the complaint appears to allege that defendants have engaged in a pattern of submitting fraudulent and perjurous documents related to the October 13, 2005 Judgment of Foreclosure and Sale in other courts, including in Bankruptcy Court. (*See* Compl. ¶¶ 12-21.) The complaint appears to allege that any declaration of default or order of foreclosure was erroneous because, as plaintiff alleges, the Bankruptcy Court's September 30, 2009 opinion notes that it appeared from CitiMortgage's records that plaintiff was not in default under the mortgage in May 2002, but nonetheless, at that time, "CitiMortgage referred the file to its attorneys for foreclosure." (*Id.* ¶ 21.) Plaintiff further claims that this fact indicates defendants' criminal intent. (*Id.*)

Therefore, in this action (as seen by, among other things, the allegations in the complaint and the preliminary injunction motion), plaintiff is seeking to undo the 2005 state court judgment based upon what plaintiff argues was a pattern of allegedly fraudulent activity, and the complaint can be construed as alleging injuries that occurred as a result of the judgment—specifically, plaintiff's resultant bankruptcy proceedings and the submissions made by defendants in support of their proof of claim in those proceedings, which sought to enforce defendants' rights resulting from the Judgement of Foreclosure and Sale. Thus, although some of plaintiff's allegations contend that the defendants committed fraud in Bankruptcy Court, many of plaintiff's allegations of fraud involve allegedly fraudulent documents or acts that were associated with the state court

foreclosure proceeding. Plaintiff further appears to allege that the fraudulent nature of the documents and defendants' fraudulent behavior undermines the outcome of the state court proceeding that resulted in the foreclosure judgment. Additionally, as her complaint did before Judge Spatt in the prior federal lawsuit, the complaint alleges that plaintiff has suffered financial and emotional distress as a result of defendants' conduct in obtaining and enforcing the judgment. Construed this way, the state court judgment was the cause of plaintiff's injuries, and this Court would necessarily have to review that judgment to decide plaintiff's claims. Given these factual allegations, which are inextricably intertwined with the state court judgment and would require overturning the state court judgment, this Court concludes that the substantive requirements of the *Rooker-Feldman* doctrine are met. Although plaintiff has labeled the relief in the complaint as seeking monetary damages, it is abundantly clear that the whole purpose of this action is to stop and undo the foreclosure judgment. In fact, after filing this lawsuit, plaintiff immediately made a motion to enjoin the foreclosure, thus proving that point. Therefore, *Rooker-Feldman* clearly applies.

This Court's determination on this issue is consistent with Second Circuit and district court decisions under analogous circumstances, both before and after the Supreme Court's decision in *Exxon Mobil*. For example, in *Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002), plaintiff alleged that defendants violated various federal statutes by proceeding to judgment against her in a state court debt collection action, despite having represented to her attorney that they would not advance the litigation without first contacting the lawyer. *Id.* at 122. Plaintiff further alleged that defendants violated the

Fair Debt Collection Practices Act in their collection efforts, violated the Connecticut Consumer Credit Protection Act, and engaged in deceptive practices violating the Connecticut Unfair Trade Practices Act. *Id.* at 125. The Second Circuit emphasized that the *Rooker-Feldman* doctrine provides that lower federal courts lack subject matter jurisdiction over claims that "effectively challenge state court judgments." *Id.* at 128. This includes claims that are "inextricably intertwined" with state court determinations. *Id.* (citing *Feldman*, 460 U.S. at 482-83 n.16).

In *Kropelnicki*, although plaintiff alleged that her claims were in fact based on defendants' fraud—rather than the debt collection matter at issue in the underlying state court action—the Second Circuit found that plaintiff's claims were inextricably intertwined with her state court claims. Specifically, the Circuit noted that "a litigant may not rely on the deception of her opponents to demonstrate that she was not afforded a reasonable opportunity to raise her claims." *Id.* (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 549 (7th Cir. 1999) (internal quotation marks omitted)). The Circuit clarified that there is no "blanket fraud exception to *Rooker-Feldman*." *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 186-87 (2d Cir. 1999)). Instead, plaintiff must demonstrate "some factor independent of the actions of the opposing party that precluded [her] from raising [her] federal claims." *Id.* at 128-29 (citing *Long*, 182 F.3d at 558). The Second Circuit further noted that:

> [I]f adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court

judgment. *See Jordhal v. Democratic Party*, 122 F.3d 192, 202 (4th Cir. 1997). Were we to accept Kropelnicki's argument that the defendants misrepresented to Licari that they would take no further steps in the state court action without first contacting him, our ruling would effectively declare the state court judgment fraudulently procured and thus void. This is precisely the result that the *Rooker-Feldman* doctrine seeks to avoid . . . .

*Id.* at 129 (citing *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) ("*Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.")). Thus, the Second Circuit held the plaintiff's claims in *Kropelnicki* were barred by *Rooker-Feldman*. *Id.*

Similarly, in *Ashby v. Polinsky*, 328 F. App'x 20 (2d Cir. 2009), *aff'g* No. 06-CV-6778 (DLI), 2007 WL 608268 (E.D.N.Y. Feb. 22, 2007), the Second Circuit found that the *Rooker-Feldman* doctrine barred a plaintiff's claims under Section 1983 in response to a state court order foreclosing on her property. *Id.* at 21. Specifically, the Second Circuit found that plaintiff's claims were barred when: (1) the plaintiff lost in New York state court; (2) the underlying injury of which she complained was the foreclosure on her property caused by the state court order; (3) she challenged the validity of that proceeding, and requested that the district court find that the state court order was unconstitutional; and (4) she filed her complaint after the state court order had been entered. *Id.*

The *Kropelnicki* and *Ashby* cases are instructive here. Like the plaintiff in *Kropelnicki*, Swiatkowski claims that the state court judgment was the result of fraud. Plaintiff's complaint alleges that the state court documents that defendants submitted in the bankruptcy proceeding were fraudulent and/or fabricated. In particular, plaintiff alleges that defendants tampered with state court documents to misrepresent the outcomes of state court proceedings to the Bankruptcy Court. (Compl. ¶ 14.) Plaintiff claims that the Notice of Entry and the Affidavit of Service for the Notice of Entry are fabricated. (*Id.*) She also alleges that someone altered the Nassau County Clerk's stamp on the state court documents. (*Id.*) Plaintiff further alleges that the Notice of Entry and the Affidavit of Service originals are not on file in the Clerk's Office in Nassau County. (*Id.* ¶ 15.) Plaintiff alleges that, by filing such documents, defendants committed a criminal fraud and violated her civil rights. Were this Court to accept plaintiff's arguments regarding defendants' allegedly fraudulent actions, the Court's ruling "would effectively declare the state court judgment fraudulently procured and thus void." *Kropelnicki*, 290 F.3d at 129. Plaintiff's claims in the instant action are inextricably intertwined with the state court proceedings. *See, e.g., Ford v. U.S. Dept. of Treasury I.R.S.*, 50 F. App'x 490 (2d Cir. 2002) ("Ford's claims regarding the alleged fraud and the statute of limitations with respect to the foreclosure judgment are inextricably intertwined with the state court's underlying foreclosure judgment.").

Plaintiff's allegations make evident that she is attempting to litigate the validity of the foreclosure action in this Court. Many of the allegedly fraudulent documents that plaintiff points to, although again re-submitted to the Bankruptcy Court, pertain to the state court

foreclosure proceedings. The state court documents were submitted by defendants in the bankruptcy proceeding as documentary support for their proof of claim, which was based upon the state court foreclosure action. Moreover, plaintiff's opposition to defendants' motion details the history of all of the court proceedings associated with the foreclosure; plaintiff's opposition does not address the specific arguments made by defendants in their moving papers. (*See* Pl.'s Opp.) In these papers, plaintiff also reiterates her contention that her mortgage payments were current and that she should not have received a notice of foreclosure from defendants. (*Id.* at 1-2; *see also id.* at 11 ("From day one, Citibanks' attorneys have been pushing me to make quick decisions and unprepared answers to documentations forwarded to courts.").) Thus, plaintiff complains of injuries caused by the state court foreclosure judgment and invites this Court to review and reject that judgment. However, this Court concludes that the *Rooker-Feldman* doctrine bars any such review. *See, e.g.*, *Pharr v. Evergreen Garden, Inc.*, 123 F. App'x 420, 421 (2d Cir. 2005) (denying plaintiffs' RICO claim, which essentially challenged a 1998 rent increase approved by the New York City Department of Housing Preservation and Development ("HPD") on the ground that defendants secured HPD approval through various fraudulent representations, under *Rooker-Feldman* because the "tenants [plaintiffs] participated in the HPD approval process through counsel and the President of their tenants' association," and because "the final HPD decision has been the subject of various state court challenges, the results of which, under *Rooker-Feldman*, are not subject to review by lower federal courts").

As discussed *supra* and *infra*, plaintiff had "ample opportunity to raise this claim before the state court," in her answer or her motions for reconsideration. *See Kropelnicki*, 290 F.3d at 129. Moreover, to the extent that plaintiff claims she was aggrieved by the state court's ruling, the proper venue to challenge that decision was by appeal in state court—not in federal court. *See, e.g.*, *Esposito v. New York*, No. 07 Civ. 11612 (SAS), 2008 WL 3523910, at *13 (S.D.N.Y. Aug. 8, 2008) ("If plaintiffs are correct that the state courts acted unconstitutionally, their proper recourse is to appeal to the higher courts of the state and then, if necessary, to the United States Supreme Court."), *aff'd in part, vacated in part by Carvel v. New York*, No. 08-4576-CV, 2010 WL 889326, at *1-2 (2d Cir. Mar. 12, 2010).

In sum, just as the Second Circuit had concluded with respect to plaintiff's prior federal lawsuit alleging civil rights violations, this Court again concludes that plaintiff's complaint "concerns allegations of various civil and constitutional rights violations but essentially amounts to an objection to the disposition of the foreclosure action by the Supreme Court, Nassau County." *Swiatkowski v. New York*, 160 F. App'x 30, 32 (2d Cir. 2005). Therefore, *Rooker-Feldman* bars the claims relating to these allegations because plaintiff seeks to undermine the state court foreclosure judgment.

B. Additional Grounds for Granting Defendants' Motion to Dismiss

Even assuming that *Rooker-Feldman* did not bar plaintiff's claims, and to the extent plaintiff argues that she is raising claims specific to defendants' conduct in Bankruptcy Court only, the Court still concludes that it should grant defendants' motion to dismiss because all of plaintiff's federal claims are

barred by ordinary preclusion principles.

### i. Ordinary Preclusion Principles

A court may dismiss a claim on *res judicata* or collateral estoppel grounds on a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment. *See Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of claims under Rule 12(b) on grounds of *res judicata*); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *see also Wilson v. Ltd. Brands*, No. 08 CV 3431 (LAP), 2009 WL 1069165, at *4 (S.D.N.Y. Apr. 17, 2009) (granting judgment on the pleadings based on collateral estoppel); *Jacobs v. Law Offices of Leonard N. Flamm*, No. 04 Civ. 7607 (DC), 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005) ("In cases where some of those factual allegations have been decided otherwise in previous litigation, however, a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging those facts."); *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 372-73 (S.D.N.Y. 1999) ("A defense of res judicata may be tested by a motion pursuant to Rule 12(c)."); *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993) ("[T]he defense of res judicata or collateral estoppel may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment").

### a. Collateral Estoppel

"[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted); *accord Hoblock*, 422 F.3d at 94. "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1985)). Collateral estoppel generally does not include a requirement that the parties against whom plaintiffs litigated in the prior proceeding be the same parties they litigate against in the current proceeding. *See United States v. Mendoza*, 464 U.S. 154, 158 (1984); *see also Amadsau v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746, at *8 (S.D.N.Y. 2005) ("[T]he doctrine of collateral estoppel does not require that the same parties are named in the earlier action in order to apply to the instant action."). Additionally, a district court may raise the issue of collateral estoppel *sua sponte*. *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998).

The Court first notes that, as discussed

above, plaintiff's complaint—and her opposition to defendants' motion—may be fairly read to challenge the results of the state court foreclosure proceedings. The merits of defendants' foreclosure action were decided in state court. On October 13, 2005, the Supreme Court, Nassau County, issued a Judgment of Foreclosure and Sale that ordered that Citibank was entitled to judgment establishing the validity of the mortgage on 7 Park Lane Place and was entitled to recover, *inter alia*, upon that mortgage $309,745.47, with interest thereon from May 31, 2004 to the date of the closing of title of the referee's sale of the mortgaged premises. (Compl. Ex. D.)

Plaintiff had a full and fair opportunity to litigate the foreclosure on the property. The Judgment of Foreclosure and Sale specifically found that the Swiatkowskis and Koloch had been duly served with the summons and complaint in the present action. (*Id.*) On January 29, 2004, Citibank's motion for summary judgment was granted, and the affirmative defenses raised by the Swiatkowskis in their answer were dismissed. The Swiatkowskis then filed a motion to reargue the Court's January 29, 2004 order. This motion was denied by the Supreme Court, Nassau County on April 26, 2004. By motion dated August 5, 2004, the Swiatkowskis next moved for an order vacating the judgment of foreclosure and dismissing the foreclosure action with prejudice. On November 10, 2004, the state court denied the Swiatkowskis their requested relief, noting that their argument had been previously determined in a prior foreclosure action and was thus barred by *res judicata* and collateral estoppel.[9]

In this case, collateral estoppel also bars plaintiff's claims regarding fraudulent documentation submitted to the Bankruptcy Court. Plaintiff had a full and fair opportunity to litigate the specific issues raised in the complaint in Bankruptcy Court. Plaintiff filed an objection to the Bankruptcy Court Order Dismissing the Case on October 27, 2009. In an objection to the Bankruptcy Court's order denying the Chapter 13 plan confirmation and dismissing the case, plaintiff made the same claims that she raises in the instant complaint. By Order dated March 31, 2010, the Bankruptcy Court overruled plaintiff's objection and noted that plaintiff's motion, in essence, sought the Bankruptcy Court's reconsideration of the same matters that had previously been before the Court. The Bankruptcy Court further noted that it had "painstakingly reviewed and analyzed the

---

court on prior occasions. On November 24, 2004, after the state court had granted summary judgment to Citibank in the state-court foreclosure action, Swiatkowski filed a petition to remove the Foreclosure Action to federal court. Swiatkowski also filed a separate civil rigths lawsuit in federal court relating to the foreclosure and defendants' actions in connection therewith. On March 18, 2005, Judge Spatt remanded the action to Supreme Court, Nassau County, and dismissed the federal lawsuit, for lack of subject matter jurisdiction based on application of the *Rooker-Feldman* doctrine. *See* Order, *Swiatkowski v. New York*, No. 04-cv-5122 and 05-cv-178 (E.D.N.Y. Mar. 18, 2005). Plaintiff appealed that decision to the Second Circuit, which affirmed based upon *Rooker-Feldman*. *See Swiatkowski v. New York*, 160 F. App'x 30, 31-32 (2d Cir. 2005). Thereafter, plaintiff again filed a notice of removal and attempted to remove the state case to this federal court on October 1, 2005. Judge Spatt once again dismissed plaintiff's claims as barred by *Rooker-Feldman*. *See Citibank, N.A. v. Swiatko[w]ski*, 395 F. Supp. 2d 5, 7 (E.D.N.Y. 2005).

---

[9] Moreover, as noted earlier, plaintiff has already attempted to raise these same claims in this federal

claims of the debtors in the seven cases" that were brought by plaintiff, her husband, and Koloch, and determined that there was no reason or cause to reopen the case; accordingly, the Bankruptcy Court dismissed plaintiff's objections. *See* Decision and Order on Objection, at 7, *In re Koloch*, No. 8-07-73919-dem (Bankr. E.D.N.Y. Mar. 31, 2010). No appeal was filed from the Order and the case is now closed.

Thus, in addition to the *Rooker-Feldman* doctrine, the Court concludes that plaintiff's federal claims are barred by collateral estoppel: to the extent that the instant complaint alleges that defendants submitted fraudulent documents to the state court that resulted in the October 2005 Judgment of Foreclosure and Sale, plaintiff had a full and fair opportunity to litigate those claims in state court—both before the Supreme Court, Nassau County, and by filing a direct appeal to the Appellate Division. To the extent that plaintiff's complaint alleges federal violations by defendants associated with the alleged submission of fraudulent documents in the Bankruptcy Court proceedings, plaintiff also had a full and fair opportunity to litigate those claims. Specifically, plaintiff filed an objection to the Bankruptcy Court's dismissal of Koloch's Chapter 13 proceeding. The Bankruptcy Court concluded that plaintiff, her husband, and Koloch had brought seven bankruptcy petitions in total. In adjudicating the resolution of each of those petitions, the Bankruptcy Court had found "no reason or cause to reopen the case." Decision and Order on Objection, at 7, *In re Koloch*, No. 8-07-73919-dem (Bankr. E.D.N.Y. Mar. 31, 2010). The Court further notes that the proper venue to challenge the Bankruptcy Court's dismissal of plaintiff's rejection was to file an appeal.[10] Accordingly, the Court concludes that plaintiff's current federal claims are identical to the issues decided in plaintiff's prior actions and are decisive of the present action, and plaintiff had a full and fair opportunity to litigate the federal claims that she raises in the instant complaint; thus, these claims are barred by collateral estoppel.

### b. *Res Judicata*

The state court and Bankruptcy Court proceedings also have *res judicata* effect and preclude plaintiff's claims in this case. The preclusive effect of *res judicata* is broader than that of collateral estoppel. Under the doctrine of *res judicata*, otherwise known as claim preclusion, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action,'" not just those that were actually litigated. *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (internal quotation marks and emphasis omitted) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998)); *accord Allen v. McCurry*, 449 U.S. 90, 94 (1980). "In applying the doctrine of res judicata, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgement would have had in state

---

[10] It also appears that the time for plaintiff to appeal from the Bankruptcy Court's Order has expired: under Bankruptcy Rule 8002, "[t]he notice of appeal shall be filed with the clerk within 14 days of the date of the entry of the judgment, order, or decree appealed from." Bankr. R. 8002. The Bankruptcy Court's Order was entered on March 31, 2010; therefore, plaintiff's time to appeal expired on April 14, 2010. In any event, even if the Court were to review the Bankruptcy Court's rulings under a *de novo* standard of review, the Court would reach the same conclusion.

court." *Burka v. N.Y. City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994). New York courts apply a transactional analysis of *res judicata*, "'barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief.'" *Id.* (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). The doctrine applies only if "(1) there is a previous adjudication on the merits; (2) the previous action involved [the party against whom *res judicata* is invoked] or its privy; and (3) the claims involved were or could have been raised in the previous action." *Whelton v. Educ. Credit Mgmt. Corp.*, 432 F.3d 150, 155 (2d Cir. 2005) (citing *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000)); *see also People ex. rel. Spitzer v. Applied Card Sys.*, 894 N.E.2d 1, 12 (N.Y. 2008). *Res judicata* applies to defenses that could have been raised in the prior action as well. *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) ("'Thus, res judicata prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided.'" (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir.1992))); *Newton Garment Carriers, Inc. v. Consol. Carriers Corp.*, 673 N.Y.S.2d 631, 632 (App. Div. 1998) ("[T]he doctrine of res judicata, or claim preclusion, forecloses a party from relitigating a cause of action that was the subject matter of a former lawsuit, or from raising issues or defenses that might have been litigated in the first suit."); *Robbins v. Growney*, 645 N.Y.S.2d 791, 792 (App. Div. 1996) ("'The doctrine of res judicata is applicable . . . to defenses raised in the prior action or which, though not raised, could have been.'" (quoting *119 Rosset Corp. v. Blimpy of N.Y. Corp.*, 409 N.Y.S.2d 735, 736 (App. Div. 1978))) (internal citations omitted).

In the instant action, the requirements for *res judicata* are met. First, the earlier state court action, which included a Final Judgment of Foreclosure and Sale, was a "previous adjudication on the merits." *Cf. Alaimo v. Gen. Motors Corp.*, No. 07-CV-7624 (KMK) (MDF), 2008 WL 4695026, at *5 (S.D.N.Y. Oct. 20, 2008) ("Here, there is no doubt that the state court trial and subsequent denial of Plaintiffs' appeal was an adjudication on the merits."). Second, the requirement that the "the previous action involved [the party against whom *res judicata* is invoked] or its privy" is also met. Lidia Swiatkowski was a defendant in the prior action[11] and is plaintiff in the present action.[12] Finally, the claims

---

[11] (*See* Compl. Ex. D.)

[12] Some decisions formulate this element as requiring that the current action be "between the same parties" as the prior action. *See, e.g.*, *Josey v. Goord*, 880 N.E.2d 18, 20 (N.Y. 2007). That standard is met here as well. Citibank, N.A. was the plaintiff in the prior action and is one of the defendants here. Additionally, given that the complaint can be construed to allege that CitiGroup and CitiMortgage acted together with Citibank in bringing the prior actions against plaintiff and her family members, the Court will deem these parties to have been in privity with Citibank. *See Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 328 (S.D.N.Y. 2008) ("'The doctrine of privity . . . is to be applied with flexibility. . . . [T]here is no bright line rule' as to whether privity exists for res judicata purposes. 'Rather, a finding of privity . . . depends on whether, under the circumstances, the interests of the [defendant] were adequately represented [in the earlier action].'" (quoting *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987) (internal citations omitted) (alteration in original))); *see also Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 743 (N.Y. 1970) (stating that privity includes, *inter alia*, "those who control an

18

involved were or could have been raised as claims or defenses in the previous action. As discussed above, central to the plaintiff's constitutional claims is the allegation that defendants improperly obtained a Judgment of Foreclosure and Sale against Swiatkowski. Many of the factual allegations plaintiff raises in opposition to the instant motion to dismiss involve issues that could have been raised as claims or defenses in the state court proceedings. In particular, any claims that plaintiff brings relating to whether defendants issued a declaration of default or order of foreclosure against plaintiff, her husband, and Koloch erroneously could have been raised by plaintiff in the state court action. Plaintiff alleges that CitiMortgage's records indicated that plaintiff was not in default under the mortgage in May 2002, but nonetheless, at that time, "CitiMortgage referred the file to its attorneys for foreclosure." (*Id.* ¶ 21.) Any claims that plaintiff's payments were current should have been raised in the Supreme Court, Nassau County foreclosure proceeding. Therefore, *res judicata* bars plaintiff's claims to the extent those claims relate to the civil court proceedings.

On November 24, 2004, after the state court had granted summary judgment to Citibank in the state-court foreclosure action, Swiatkowski filed a petition to remove the Foreclosure Action to federal court. On March 18, 2005, Judge Spatt remanded the action to Supreme Court, Nassau County, for lack of subject matter jurisdiction based on application of the *Rooker-Feldman* doctrine. *See* Order, *Swiatkowski v. New York*, No 05-cv-178 (E.D.N.Y. Mar. 18, 2005). Plaintiff appealed that decision to the Second Circuit,

which dismissed the appeal of that decision pursuant to 28 U.S.C. § 1447(d) on July 1, 2005. *See Swiatkowski v. New York*, 160 F. App'x 30, 31-32 (2d Cir. 2005). Thereafter, plaintiff again filed a notice of removal and attempted to remove the state case to this federal court on October 1, 2005. Judge Spatt once again dismissed plaintiff's claims as barred by *Rooker-Feldman*. *See Citibank, N.A. v. Swiatko[w]ski*, 395 F. Supp. 2d 5, 7 (E.D.N.Y. 2005).

*Res judicata* also bars plaintiff's forgery and fraudulent document claims to the extent that they were raised in the Bankruptcy Court.[13] As discussed *supra*, plaintiff had a full and fair opportunity to litigate the specific issues raised in the complaint in Bankruptcy Court. Plaintiff specifically raised the same claims regarding the alleged alteration of the date on the Notice of Entry and Judgment of

---

[13] The Court additionally notes that plaintiff's allegation that Citibank did not serve the Judgment of Foreclosure and Notice of Entry, which was issued on October 13, 2005, until one year and two months after its entry is without merit. It is clear from the record that shortly after the judgment from the foreclosure action was entered, Michael Swiatkowski filed a voluntary petition for relief under Chapter 13. At that time, the property became subject to the stay on all debtor's property that is automatic in bankruptcy proceedings under 11 U.S.C. § 362. On January 3, 2006, CitiMortgage filed a motion for relief from the stay. The Bankruptcy Court eventually dismissed the case on November 22, 2006. Accordingly, shortly thereafter, on December 22, 2006, defendants served the Notice of Entry and Final Judgment of Foreclosure and Sale on plaintiff. Moreover, defendants submitted with their moving papers a certified copy of the Notice of Entry filed with the Court Clerk of Supreme Court, Nassau County, demonstrating that defendants did not tamper with the Court's "filed Dec. 26, 2006" seal.

---

action although not formal parties to it [and] those whose interests are represented by a party to the action").

Foreclosure and Sale. Plaintiff's objection in Bankruptcy Court also alleged that the foreclosure sale of her property was listed in local newspapers on November 9, 2005, but that the plaintiff and all parties involved were not notified about the sale. Plaintiff also alleged in her objection that the Affidavit of Service stated that the notice was mailed more than a year after the sale was listed in the paper. Plaintiff further alleged that the Sworn Notary for Affidavit of Service in the order is signed by the same attorney who signed off on the notice of service on the same order, Tedd Powel, Esquire. Plaintiff also alleged that the Nassau County Clerks' Office Seal of receipt on the order had been tampered with and the date was altered from 2005 to 2006. *See* Objection to Order Denying Confirmation of Chapter 13 and Dismissing the Case Without Prejudice, at 1-3, *In re Koloch*, No. 07-73919 (Bankr. E.D.N.Y. Oct. 27, 2009). Plaintiff further alleged, in her objection, that CitiMortgage incorrectly referred her mortgage file to its attorneys for foreclosure even though her payments were current in May 2002. *See id.*

The Koloch bankruptcy action involved plaintiff—she was a co-mortgagor on the property at 7 Park Lane Place with Betina Koloch. Plaintiff also filed several objections throughout the Koloch bankruptcy proceeding. Most notably, plaintiff filed an objection to the Bankruptcy Court order that denied Koloch Chapter 13 plan confirmation and dismissed the case. In that objection, as indicated above, plaintiff made the same claims regarding fraud and falsified documents that she raises in the instant complaint. By Order dated March 31, 2010, the Bankruptcy Court overruled plaintiff's objection and noted that plaintiff's motion, in essence, sought the Bankruptcy Court's reconsideration of the same matters that had

previously been before the court. The Bankruptcy Court further noted that it had "painstakingly reviewed and analyzed the claims of the debtors in the seven cases" that were brought by plaintiff, her husband, and Koloch, and therefore dismissed plaintiff's objections. *See* Decision and Order on Objection, *In re Koloch*, No. 8-07-73919-dem (Bankr. E.D.N.Y. Mar. 31, 2010).

In sum, because plaintiff raised or could have raised her present claims in prior court actions, which were previously adjudicated on the merits—in both state court and before the Bankruptcy Court—and because plaintiff was involved in those prior actions, *res judicata* bars plaintiff's current federal claims based upon allegedly fraudulent submissions made by defendants in state court and Bankruptcy Court, and based on any alleged error in the state court's Judgment of Foreclosure and Sale.[14]

---

[14] Finally, even assuming *arguendo* that plaintiff was attempting to allege some new state court claim in this lawsuit, having determined that plaintiff's federal claims do not survive defendants' motion to dismiss, the Court concludes that retaining jurisdiction over any state law claims that plaintiff's complaint attempts to assert is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)). Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claims because "it 'has dismissed all claims over which it

D. Sanctions

Defendants seek to impose sanctions on plaintiff in the form of costs and an order banning plaintiff from future filings without Court approval. For the reasons discussed below, defendants' motion is denied.

## 1. Costs

"[T]he decision of whether to award costs . . . 'is committed to the sound discretion of the district court.'" *Cosgrove v. Sears, Roebuck, & Co.*, 191 F.3d 98, 102 (2d Cir. 1999) (quoting *ARP Films, Inc. v. Marvel Entm't Group, Inc.*, 952 F.2d 643, 651 (2d Cir. 1991)); *see also Ne. Holdings, L.L.C. v. Town of Riverhead*, 244 F.R.D. 166, 167 (E.D.N.Y. 2007) ("Taxation of costs if [sic]

_____

has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court."). Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over any remaining state law claims plaintiff is attempting to assert given the absence of any federal claims that survive.

left to the discretion of the Court, and may be overturned on appeal 'only in the event of an abuse of discretion.'" (quoting *In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 687 F.2d 626, 629 (2d Cir. 1982))).

Rule 54 of the Federal Rules of Civil Procedure states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs-other than attorney's fees-should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Given the language of Rule 54(d), "an award against the losing party is the normal rule obtaining in civil litigation, not an exception. . . . For this reason, the losing party has the burden to show that costs should not be imposed. . . ." *Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001) (citation omitted); *see also Cosgrove*, 191 F.3d at 101 ("Fed. R. Civ. P. 54(d) grants costs to a prevailing party as a matter of course in the absence of a countervailing statute or rule, unless the trial judge directs otherwise."); *Zacharowicz v. Nassau Health Care Corp.*, No. 02-CV-4510, 2007 U.S. Dist. LEXIS 20946, at *4-5 (E.D.N.Y. Mar. 22, 2007) ("After the prevailing party demonstrates the amount of its costs and that they fall within an allowable category of taxable costs, that party enjoys a presumption that its costs will be awarded.").

However, although the award of costs to the prevailing party is the norm under Rule 54 rather the exception, it is well settled that the district court has the discretion to deny costs that are otherwise properly taxable if equitable considerations warrant such a result. "[F]or example, costs may be denied because of misconduct by the prevailing party, the public importance of the case, the difficulty of the issues, or the losing party's limited financial resources." *Whitfield*, 241 F.3d at 270. These examples do not constitute an exhaustive list

and the court may consider other equitable considerations that are applicable in a particular case. *See, e.g.*, *Moore v. Cnty. of Del.*, 586 F.3d 219 (2d Cir. 2009) (discussing the equitable considerations under Rule 54 in the context of a motion for costs under Fed. R. App. P. 39).

Here, the Court, in its discretion, determines that costs are not warranted. As discussed *infra*, although plaintiff's claims are barred by the doctrines of *Rooker-Feldman*, collateral estoppel, and *res judicata*, these are difficult concepts that a *pro se* party may not readily understand. *See Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989) (noting, in the context of a motion for Rule 11 sanctions, that "the court may consider the special circumstances of litigants who are untutored in the law."). Moreover, although the Court acknowledges that "indigency *per se* does not automatically preclude an award of costs," *Whitfield*, 241 F.3d at 270, but plaintiff's *pro se* status and limited financial resources warrant the denial of costs here. Accordingly, defendants' motion for costs is denied.

### 2. Filing Injunction

The issuance of a filing injunction is appropriate when a plaintiff abuses court process to harass and annoy others with "'meritless, frivolous, vexatious or repetitive . . . proceedings.'" *Davey v. Dolan*, 453 F. Supp. 2d 749, 755 (S.D.N.Y. 2006) (quoting *In re Hartford Textile Corp.*, 659 F.2d 299, 305 (2d Cir. 1991)). To determine whether a filing injunction is warranted, a district court should consider:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.* at 756. Here, Swiatkowski has a history of litigation involving duplicative lawsuits. This is her third attempt to raise claims in federal court relating to the state foreclosure judgment. The Court also notes that the Swiatkowskis have recently filed their eighth bankruptcy petition. Furthermore, a recitation of the procedural history of plaintiff's court filings makes evident that her motivation in pursuing the litigation is in part to delay the foreclosure proceeding on her home at 7 Park Lane Place in Massapequa, NY. Although plaintiff is *pro se*, which weighs against imposition of a filing injunction, the Court notes that Judge Spatt previously warned plaintiff that Court was contemplating the issuance of an order both prohibiting the Swiatkowskis from filing any future lawsuits in the Eastern District of New York without prior permission of the Court and prohibiting the Swiatkowskis from filing any papers in connection with this case, unless such papers are in response to those submitted by their adversary. *Swiatko[w]ski*, 395 F. Supp. 2d at 10. Furthermore, plaintiff's duplicative filings—two before Judge Spatt and now one before this Court—have resulted in additional expense to defendants, who have had to defend themselves against Swiatkowski's allegations, as well as appear in federal bankruptcy court to file proofs of claim and a

variety of motions regarding the property.

Although many of these factors favor the ban, including plaintiff's repeated use of the Court system to delay foreclosure, because plaintiff is *pro se* and because one aspect of plaintiff's complaint included allegations regarding more recent events—notably, Koloch's Chapter 13 bankruptcy filing—the Court will give the plaintiff the benefit of the doubt that she believed, albeit erroneously, that principles of *Rooker-Feldman* and *res judicata* did not apply to this action. The fact that plaintiff did not file this federal lawsuit until over five years after the Second Circuit's decision in 2005 affirming Judge Spatt's remand to state court, and only after Judge Milton had issued an order in September 2009 reducing CitiMortgage's proof of claim (from $475,473.99 to $444,590.14), provides further support for the Court's conclusion that the *pro se* plaintiff sincerely believed (albeit erroneously) that the events in Bankruptcy Court somehow gave her the new ability to challenge the state court's 2005 judgment in federal court. However, "[d]uplicative litigation is, to be sure, clearly impermissible, and plaintiff must understand that further filing of overlapping pleadings may require sanctions." *Soling v. N.Y. State*, 804 F. Supp. 532, 539 (S.D.N.Y. 1992). The Court thus, in its discretion, declines to impose a filing injunction on plaintiff at this time, but issues plaintiff one final warning that any future filings of this nature will result in such a ban.

## IV. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss is granted. Specifically, the Court grants defendants' motion to dismiss plaintiff's federal claims because they are barred by the *Rooker-Feldman* doctrine, collateral estoppel, and *res judicata*. To the extent that plaintiff is attempting to raise any new state law claims, the Court declines, in its discretion, to exercise supplemental jurisdiction over any such claims. Accordingly, defendants' motion to dismiss is granted, and plaintiff's complaint is dismissed in its entirety. However, defendants' request for sanctions – including costs and an order precluding plaintiff from bringing further lawsuits without leave of Court – is denied. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 7, 2010
Central Islip, New York

\* \* \*

Plaintiff is proceeding *pro se*. Defendants are represented by Bennett R. Katz of Katz & Rychik, P.C., 116 John St. 7th Floor, New York, NY 10038.